**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

DARLA TOWNER, )
)
    Plaintiff, )
) CIVIL ACTION
v. )
) No. 12-2649-KHV
VCA ANIMAL HOSPITALS, INC., )
d/b/a/ WELBORN ANIMAL HOSPITAL, )
    and )
JAMES R., "JIM or J.R." SWANSON, D.V.M., )
)
    Defendants. )
_____)

## MEMORANDUM AND ORDER

Darla Towner brings employment claims against VCA Animal Hospitals, Inc. ("VCA") and James R. Swanson, D.V.M. Specifically, plaintiff claims that VCA committed sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Count I). Plaintiff also alleges a state law claim of outrage against Swanson (Count II). This matter is before the Court on Swanson's Motion To Dismiss (Doc. #5) filed December 3, 2012. Swanson seeks dismissal of plaintiff's outrage claim for lack of subject matter jurisdiction under Rule 12(b)(1), Fed. R. Civ. P., and failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P. For reasons set forth below, the Court finds that the motion should be sustained in part.

This matter is also before the Court on Plaintiff's Motion For Leave To File Second Amended Complaint, With Suggestions (Doc. #23) filed May 3, 2013, which the Court overrules because the proposed amendment would be futile.

I.  **Legal Standards**

   A.   Rule 12(b)(1)

The Court may only exercise jurisdiction when specifically authorized to do so, see Castaneda v. INS, 23 F.3d 1576, 1580 (10th Cir. 1994), and must "dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." Scheideman v. Shawnee County Bd. of Cnty. Comm'rs, 895 F. Supp. 279, 280 (D. Kan. 1995) (citing Basso v. Utah Power & Light Co., 495 F.2d 906, 909 (10th Cir. 1974)); Fed. R. Civ. P. 12(h)(3). Plaintiff bears the burden of showing that jurisdiction is proper. See Jensen v. Johnson Cnty. Youth Baseball League, 838 F. Supp. 1437, 1439-40 (D. Kan. 1993).

Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction generally take two forms: facial attacks on the complaint or factual attacks on the accuracy of the allegations in the complaint. See Holt v. United States, 46 F.3d 1000, 1002-03 (10th Cir. 1995). In challenging the court's jurisdiction, a facial attack looks only to the factual allegations of the complaint, while a factual attack goes beyond the factual allegations of the complaint and presents evidence in the form of affidavits or otherwise. Muscogee (Creek) Nation v. Okla. Tax Comm'n, 611 F.3d 1222, 1227 (10th Cir. 2010). Here, defendant makes a facial attack.

   B.   Rule 12(b)(6)

In ruling on a motion to dismiss under Rule 12(b)(6) the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement of relief. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible – and not merely conceivable – on its face. Id. at 679-80; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial

experience and common sense. Iqbal, 556 U.S. at 679.

The Court need not accept as true those allegations which state only legal conclusions. See id.; Hall v. Bellmon, 935 F.3d 1106, 1110 (10th Cir. 1991). Plaintiff bears the burden of framing her complaint with enough factual matter to suggest that she is entitled to relief; it is not enough to make threadbare recitals of a cause of action accompanied by conclusory statements. Twombly, 550 U.S. at 556. Plaintiff makes a facially plausible claim when she pleads factual content from which the Court can reasonably infer that defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678. Plaintiff must show more than a sheer possibility that defendant acted unlawfully – it is not enough to plead facts that are "merely consistent with" defendants's liability. Id. (quoting Twombly, 550 U.S. at 557). A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement will not stand. Iqbal, 556 U.S. at 678. Similarly, where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged – but has not "shown" – that the pleader is entitled to relief.. The degree of specificity necessary to establish plausibility and fair notice depends on context, because what constitutes fair notice under Rule 8(a)(2), Fed. R. Civ. P., depends on the type of case. Robbins v. Okla., 519 F.3d 1242, 1248 (10th Cir. 2008).

C.  Rule 15(a)

Rule 15(a), Fed. R. Civ. P., provides that a court shall allow a party to amend pleadings "when justice so requires." A court may deny leave to amend, however, when the proposed amendment would be futile. Bauchman v. W. High Sch., 132 F.3d 542, 559 (10th Cir. 1997) (internal citations omitted). An amendment is futile when it would be subject to a motion to dismiss for failure to state a claim. Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc., 175 F.3d 848, 859 (10th Cir. 1999).

## II. Factual Background

The amended complaint alleges the following facts.

Plaintiff is a female and lives in Edgerton, Kansas. In November of 2010, she began working as an administrative assistant at VCA animal hospital in Kansas City, Kansas. Defendant Swanson is a veterinarian at VCA and was one of plaintiff's supervisors.

Beginning in March of 2011, Swanson repeatedly engaged in inappropriate unwelcome conduct toward plaintiff, including the following: (1) telling plaintiff that she was "beautiful" and a "special girl" with lots of "opportunity;" (2) touching plaintiff on her buttocks, face, shoulders and back; (3) giving plaintiff hugs and rubbing his body against her in a sexual manner; (4) telling plaintiff that he liked sex and was sexually active; and (5) asking plaintiff if her boyfriend pleased her and if she pleased her boyfriend.

In May of 2011, Swanson summoned plaintiff to the hospital basement and asked her "What the fuck are you doing [working] here?" He told plaintiff that she was a "beautiful" single mother of four, and that she was so much better than the work she was doing. Swanson moved his chair close to plaintiff, positioned his body in between her legs, placed his hands on her cheeks and continued to tell her she was beautiful before he told her she could leave and go back upstairs.

One day in July of 2011, plaintiff wore a tank top to work. Swanson commented "Look at you showing off your body," and told her that she should not dress like that around a man like him. Plaintiff immediately went to another room and put a work smock on over her tank top.

On August 22, 2011, plaintiff went to the kennel area to tell Swanson he had a telephone call. Swanson pointed a vacuum hose directly at plaintiff's crotch and smiled at her. He then pointed the hose at his crotch, started laughing and asked plaintiff why her face was so red. That same day, as Swanson was getting a prescription out of a locked box, he looked at plaintiff, laughed and said, "I

-4-

know how to get it in and out? Do you?" Plaintiff understood his comment to be sexual in nature.[1]

Swanson engaged in "intentional reckless conduct" regarding treatment of animals. Specifically, in May or June of 2011, Swanson was trimming a dog's nails when plaintiff went to help hold the dog, who was moving around. Swanson told plaintiff that he didn't need her assistance, and then punched the dog on the head. When the dog continued to move, Swanson yelled and cursed at the dog, called the dog "fucking stupid" and told the dog it had no "fucking manners." Plaintiff then watched as Swanson punched the dog twice in the abdomen.

On another occasion in May or June of 2011, VCA employees were trying to muzzle an upset dog. Swanson told them that he would take care of the dog, and aggressively dragged the dog outside. A male coworker later told plaintiff that Swanson repeatedly slammed the dog against a fence in order to subdue the dog.

In June of 2011, plaintiff reported Swanson's unwelcome sexual comments and actions towards her to Dr. Karen Snyder, a VCA veterinarian with supervisory authority over plaintiff. On August 26, 2011, plaintiff complained about Swanson's behavior to John Bock, another VCA veterinarian with supervisory authority over plaintiff and to John Riedesel, the office manager.[2] Later that afternoon, Bock and Riedesel told plaintiff to make a written complaint against Swanson. They placed plaintiff alone in a locked room to write out the complaint.[3] Plaintiff told them that she did not feel comfortable writing this report at work when Swanson was in the office, but Bock and

---

[1] Swanson also made sexual comments and sent emails and letters to other female employees and former employees. Many VCA employees knew of Swanson's sexually inappropriate comments and actions towards plaintiff.

[2] Riedesel is Swanson's nephew.

[3] Bock and Riedesel instructed plaintiff not to open the door for anyone except them.

-5-

Riedesel insisted. Plaintiff wrote out a statement and asked to be let out of the locked room. She gave her complaint to Riedesel, who told plaintiff that Swanson was in the building and had been informed of what was happening. VCA excused plaintiff from working the remainder of her shift and sent her home. Later that evening, Riedesel sent plaintiff a text message instructing her not to come to work the next day.

On Monday, August 29, 2011, plaintiff returned to work. That week, Lynette Gerbi from the VCA corporate office met with plaintiff. During their initial meeting, plaintiff spoke to Gerbi about Swanson's unwelcome and sexually offensive comments and actions. Later that week, Gerbi and Bock told plaintiff that Swanson would not be working at the hospital anymore. They also told plaintiff that Bock would escort her to and from her car each day. This plan for an escort made plaintiff feel unsafe at work.

After plaintiff complained about Swanson on August 26, 2011, Swanson's father started showing up at the hospital unexpectedly and would "stop and stare" at plaintiff. She found his presence threatening, and complained to Bock, but Swanson's father continued to come to the hospital and stare at plaintiff. Further, some coworkers started to whisper about plaintiff, made noises under their breath when she walked by and became standoffish. Plaintiff reported this to Bock, but the conduct did not stop. Plaintiff felt she had no choice but to resign on September 7, 2011.

As a direct result of Swanson's conduct, plaintiff has suffered damage, including past and future emotional distress, pain, suffering, embarrassment, humiliation, mental anguish, and other non-pecuniary losses.

**III. Analysis**

    A.    <u>Motion To Dismiss For Lack Of Subject Matter Jurisdiction</u>

Swanson argues the complaint does not allege jurisdiction over plaintiff's state law claim of outrage. The amended complaint asserts federal question jurisdiction under 28 U.S.C. § 1331, which authorizes jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." Section 1331 clearly provides subject matter jurisdiction over plaintiff's Title VII claim against VCA. Plaintiff's state law outrage claim against Swanson does not arise under federal law, however, and the claim therefore does not fall under Section 1331. Further, plaintiff does not allege diversity jurisdiction under 28 U.S.C § 1332.[4]

Although the complaint does not specifically allege a statutory basis of jurisdiction over the state law outrage claim, the Court may exercise supplemental jurisdiction over state law claims which derive from a common nucleus of operative fact with asserted federal claims. See 28 U.S.C. § 1367(a) ("district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy"); <u>City of Chi. v. Int'l Coll. of Surgeons</u>, 522 U.S. 156, 164-65 (1997) (federal and state law claims which arise from common nucleus of operative facts permit conclusion that entire action constitutes single case).

Plaintiff cites <u>Jones v. Intermountain Power Project</u>, 794 F.2d 546, 550-51 (10th Cir. 1986), in support of her argument that the Court should exercise supplemental jurisdiction over her state law claim. Swanson correctly points out that <u>Jones</u> dealt with supplemental jurisdiction over a

---

    [4]    The complaint does not set out Swanson's state of residence. Swanson states that he is a resident of Kansas. See <u>Suggestions In Support Of Defendant Swanson's Motion To Dismiss</u> (Doc. #6) filed December 3, 2012 at 1.

*pendent claim*, i.e. a state court claim against the same party over which the court had subject matter jurisdiction for a federal claim. In contrast, here plaintiff asks the Court to exercise *pendent party* jurisdiction. See Jones, 794 F.2d at 549-550. In any event, the Supreme Court has abrogated the Jones decision to the extent that it relied upon the finding that federal courts have exclusive jurisdiction over Title VII claims. Yellow Freight Sys. v. Donnelly, 494 U.S. 820, 826 (1990) (federal courts do not have exclusive jurisdiction over civil actions brought under Title VII); see Palmer v. Schwan's Sales Enters., No. 92-1553-PFK, 1993 WL 390053, at *4 (D. Kan. Sept. 27, 1993) (noting that Tenth Circuit decision in Jones upholding exercise of pendent claim jurisdiction relied heavily on understanding that plaintiffs could not file Title VII claims in state court). Since Jones, however, federal courts have exercised supplemental jurisdiction over state law claims against pendent parties in a variety of circumstances. See Johnson v. United States, No. 05-4036-JAR, 2005 WL 3470343, at *3 (D. Kan. Dec. 19, 2005) (citing Yeager v. Norwest Multifamily, Inc., 865 F.Supp. 768 (M.D. Ala. 1994) (state law battery claim against supervisor joined with Title VII action against employer)); Millan v. Hosp. San Pablo, 389 F. Supp.2d 224, 237 (D. P.R. 2005) (state law medical malpractice claims against doctors joined with federal EMTALA claims against hospitals).

Here, plaintiff alleges that the outrage claim against Swanson arises from the same core of facts on which her Title VII claim against VMA rests. Of course, in order to prove her Title VII sexual harassment claim against VMA, plaintiff must establish additional facts regarding complaints to her employer and the employer's failure to take appropriate steps. Because plaintiff's outrage claim is substantially based on the facts underlying her Title VII claim, however, the two claims share a sufficient set of operative facts under Section 1367(a) such that the Court may exercise supplemental jurisdiction over the outrage claim. See Fisher v. Lynch, 531 F. Supp.2d 1253, 1270-

71 (D. Kan. 2008) (supplemental jurisdiction over defamation claim where alleged defamation occurred in context of child custody dispute underlying Section 1983 claim; two claims shared sufficient set of operative facts); (Busey v. Bd. of Cnty. Comm'rs of Cnty. of Shawnee, Kan., 163 F. Supp.2d 1291, 1294 (D. Kan. 2001) (supplemental jurisdiction where factual showing under federal retaliatory discharge claim necessarily involved same facts as state law retaliatory constructive discharge claim).

The decision whether to exercise supplemental jurisdiction is discretionary. Section 1367 provides that a district court may decline to exercise supplemental jurisdiction if:

> (1) the claim raises a novel or complex issue of State law[;] (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction[;] (3) the district court has dismissed all claims over which it has original jurisdiction[;] or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). Swanson asserts that the Court should decline jurisdiction because plaintiff's outrage claim involves novel and complex state issues. As addressed later in this opinion, the state issues are resolvable with established precedent. The Court additionally notes that the state law claim does not substantially predominate over the Title VII claim, over which this Court retains original jurisdiction. Accordingly, the motion to dismiss the outrage claim for lack of subject matter jurisdiction is overruled.

    B.    <u>Motion To Dismiss For Failure To State A Claim</u>

Swanson asserts that the amended complaint fails to allege facts which set forth a claim for the tort of outrage under Kansas law. In Kansas, the tort of outrage is the same as the tort of intentional infliction of emotional distress. Hallam v. Mercy Health Ctr. of Manhattan, Inc., 278 Kan. 339, 340, 97 P.3d 492, 494 (2004). The elements of intentional infliction of mental distress

include (1) intentional conduct or conduct in reckless disregard of plaintiff; (2) extreme and outrageous conduct; (3) a causal connection between defendant's conduct and plaintiff's mental distress; and (4) extreme and severe mental distress. Valadez v. Emmis Comm'ns, 290 Kan. 472, 476, 229 P.3d 389, 394 (2010) Kansas has set a very high standard for intentional infliction of emotional distress. P.S. ex rel. Nelson v. The Farm, Inc., 658 F. Supp.2d 1281, 1304 (D. Kan. 2009); see Fusaro v. First Family Mtg. Corp., 257 Kan. 794, 805, 897 P.2d 123, 131 (1995) (conduct must be so outrageous in character and so extreme in degree "as to go beyond the bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society"). Kansas follows the Restatement § 46(1), which provides as follows:

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

Restatement (Second) of Torts § 46(1); see Wiehe v. Kukal, 225 Kan. 478, 480-81, 592 P.2d 860, 862 (1979). Comment d to the Restatement explains the element of extreme and outrageous conduct as follows:

> The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"
>
> The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to

occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where someone's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam.

Id. cmt. d.[5]

Courts applying Kansas law have been reluctant to extend the outrage cause of action to discrimination claims arising in the employment setting. See Wilkerson v. P.I.A. Topeka, Inc., 900 F. Supp. 1418, 1423 (D. Kan. 1995). Plaintiff cites two cases, however, which found that severe harassment raised a jury question for liability under a theory of intentional infliction of emotional distress. See Laughinghouse v. Risser, 754 F. Supp. 836, 843 (D. Kan. 1990) (plaintiff produced evidence that supervisor engaged in "concerted effort to terrorize her and to intentionally break her spirit"); Gomez v. Hug, 7 Kan. App.2d 603, 604, 645 P.2d 916, 918 (1982) (plaintiff subjected to vulgar, racist expressions and threats of violence resulting in potentially serious medical problems). Here, Swanson's alleged harassment could plausibly satisfy the standard for extreme and outrageous conduct. Cf. Bolden v. PRC Inc., 43 F.3d 545, 554 (10th Cir. 1994) (workplace harassment by coworkers including references to Ku Klux Klan, use of racial slurs and cartoons, repeated name-calling and derision and physically aggressive behavior did not constitute tort of outrage against employer or manager). The complaint, however, alleges in a conclusory statement that plaintiff

---

[5] The Kansas Supreme Court has ruled that a court must make two threshold determinations before submitting a claim for the tort of outrage to a jury: "(1) Whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery; and (2) whether the emotional distress suffered by plaintiff is in such extreme degree the law must intervene because the distress inflicted is so severe that no reasonable person should be expected to endure it." Taiwo v. Vu, 249 Kan. 585, 592, 822 P.2d 1024, 1029 (1991) (citing Roberts v. Saylor, 230 Kan. 289, 292-93, 637 P.2d 1175, 1178-79 (1981)); Valadez v. Emmis Commc'ns, 290 Kan. 472, 477, 229 P.2d 389, 394 (2012).

suffered "emotional distress, pain, suffering, embarrassment, humiliation [and] mental anguish." The complaint thus fails to allege the required *extreme* and *severe* emotional distress. Cf. Ellibee v. Biggs, 251 P.3d 113 (Table), 2011 WL 1878153, at *3 (Kan. App. May 6, 2011) (although plaintiff alleged that defendant destroyed his reputation, failed to allege extreme emotional distress). The Court finds that plaintiff fails to set forth a claim for the tort of intentional infliction of emotional distress.

### C. Motion For Leave To File Second Amended Complaint

Plaintiff's proposed second amended complaint alleges virtually the same facts as the amended complaint, but seeks to assert an outrage claim against VCA as well as against Swanson. As set out above, the Court has found that plaintiff has failed to set forth a claim for intentional infliction of emotional distress. The proposed second amended complaint does not allege any additional facts regarding extreme and severe emotional distress. The Court therefore finds that the proposed amended complaint is futile because it would be subject to a motion to dismiss for failure to state a claim. See Nkemakolam v. St. John's Military Sch., 890 F. Supp.2d 1260, 1260-62 (D. Kan. 2012) (court justified in denying motion to amend as futile if proposed amendment fails to state claim).

**IT IS THEREFORE ORDERED** that James Swanson's Motion To Dismiss (Doc. #5) filed December 3, 2012 be and hereby is **SUSTAINED**. The Court finds that plaintiff's state law claim for outrage (Count II) be and hereby is **DISMISSED** for failure to state a claim.

**IT IS FURTHER ORDERED** that Plaintiff's Motion For Leave To File Second Amended Complaint, With Suggestions (Doc. #23) filed May 3, 2013 be and hereby is **OVERRULED**.

Dated this 7th day of May, 2013 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge